# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT COLMAN, AS TRUSTEE | ) | |
| OF THE ROBERT COLMAN TRUST | ) | |
| Plaintiff, | ) | Case No. 05 C 3894 |
| | ) | |
| v. | ) | Judge Blanche M. Manning |
| | ) | |
| ROGER GREENFIELD, THEODORE | ) | |
| KASEMIR, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Before the court is defendants' motion to dismiss under Rule 12(b)(6) certain counts of plaintiff's complaint for failure to state a claim. For the reasons stated below, the defendants' motion is denied in part and granted in part.

## I.      Background

Plaintiff has filed a ten-count complaint seeking to enforce a judgment he has obtained against defendants' affiliates. Specifically, plaintiff alleges that he has a $954,728.60 judgment (excluding attorneys' fees, costs, and interest) against Bar Louie Tempe, Inc. and a $488,604.20 judgment (again excluding attorneys' fees, costs, and interest) against defendant Restaurant Development Group ("RDG"). Defendants Roger D. Greenfield and Theodore Kasemir are officers, directors, and sole shareholders of both RDG and Bar Louis Tempe. According to the plaintiff, Greenfield and Kasemir, in order to avoid making payment on the judgments, caused RDG to transfer to or for the benefit of the defendants valuable rights under certain management agreements for no consideration and thereafter caused RDG to cease its business operations.

Plaintiff seeks to avoid RDG's alleged fraudulent transfers and to collect the judgments from the defendants based upon their improper conduct and failure to operate their business in accordance with applicable law.

Defendants have moved to dismiss counts II (avoidance of fraudulent transfers–actual fraud), III (aiding and abetting actual fraudulent transfers), IV (avoidance of fraudulent transfers–constructive fraud), VI (aiding and abetting breach of fiduciary duties) and VIII (aiding and abetting unlawful dividend) of the Amended Complaint[1] under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Specifically, defendants contend that a cause of action for aiding and abetting does not exist under Illinois law and that counts II and IV must be dismissed because plaintiff has failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

## II.     Standard for Motion to Dismiss

The Court may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.     Analysis

_____

[1]The court dismissed the initial complaint without prejudice on July 21, 2005, because of jurisdictional-related pleading deficiencies.

A.    *Aiding and Abetting*

Defendants first argue that no separate tort of aiding and abetting law exists in Illinois.

*Classic Amenities, Inc. v. Verbeke*, et al., No. 00 C 3326, 2003 WL 21801021, at *2 n.1 (N.D. Ill.

August 1, 2003) ("Ready Care argues that under Illinois law there is no separate tort of aiding

and abetting. As pointed out in *Eastern Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir.

2000), this is true.").

It is true that the Seventh Circuit stated in *Eastern Trading* that "aiding and abetting is a

basis for imposing liability for the tort aided and abetted rather then being a separate tort."

*Eastern Trading*, 229 F.3d at 623.  In so holding, however, the Seventh Circuit acknowledged

that at least two Illinois cases had recognized aiding and abetting as a distinct claim.  *Id.* (stating

that "a couple of cases have language (weakly) consistent with the separate-tort idea.") *(citing*

*Carter Coal Co. v. Human Rights Comm'n*, 633 N.E.2d 202, 205 (Ill. App. Ct. 1994); *Wolf v.*

*Liberis,* 505 N.E.2d 1202, 1208 (Ill. App. Ct. 1987)).  Indeed, cases subsequent to *Eastern*

*Trading* have recognized a separate cause of action for aiding and abetting.  *Thornwood, Inc. v.*

*Jenner & Block*, 799 N.E.2d 756, 759-762 (Ill. App. Ct. 2003) (recognizing aiding and abetting

fraud and aiding and abetting breach of fiduciary duty); *Hefferman v. Bass*, No. 04 C 5748, 2005

WL 936900, at *3 (N.D. Ill. Apr. 15, 2005) (addressing defendant's motion to dismiss an aiding

and abetting claim "rooted in intentional behavior" and stating the elements thereof) (*citing*

*Thornwood*, 799 N.E.2d 756).

Moreover, the District Court for the Southern District of New York recently had occasion

to address whether such causes of action existed as distinct and separate claims under Illinois law

in *In re Parmalat Securities Litigation*, 377 F. Supp. 2d 390, 412-14 (S.D.N.Y. 2005).  The *In re*

*Parmalat* court noted the conflict between the Seventh Circuit's position in *Eastern Trading* and

subsequent cases interpreting Illinois law, such as *Thornwood* and *Hefferman*, and concluded that

"[g]iven this trend in the lower courts, the Court cannot agree with defendants that *Thornwood* is

an outlier unworthy of the respect that a federal court sitting in diversity must give to the

decisions of the Illinois Court of Appeals." *In re Parmalat*, 377 F. Supp. 2d at 413-14 (citations

omitted).

This court agrees with the *In re Parmalat* court that Illinois courts recognize separate

claims for aiding and abetting. This court acknowledges that it has previously concluded that the

"Seventh Circuit has expressly found that the tort of aiding and abetting fraud does not exist in

Illinois." *W. United Life Assurance Co. v. Fifth Third Bank*, 02 C 7315, 2003 WL 21800076, at

*4 (N.D. Ill. July 29, 2003) (*citing Eastern Trading*, 229 F.3d at 624). However, as the

defendants note in their brief, the *Thornwood* case by the Illinois Appellate Court finding a cause

of action for aiding and abetting was decided *after* this court's ruling in *Fifth Third Bank*.

Further, as the *In re Parmalat* court noted, "the dispute is academic" because the:

> Seventh Circuit and the intermediate Illinois courts agree that knowingly
> assisting another to commit fraud gives rise to civil liability under Illinois
> law. They simply disagree on whether such conduct should be called fraud
> or aiding and abetting fraud.

*In re Parmalat*, 377 F. Supp. 2d at 414; *see Eastern Trading*, 229 F.3d at 623 ("There is nothing

to be gained by multiplying the number of torts, and specifically by allowing a tort of aiding and

abetting a fraud to emerge by mitosis from the tort of fraud, since it is apparent that one who aids

and abets a fraud, in the sense of assisting the fraud and wanting it to succeed, is himself guilty of

fraud"). Because the court concludes that a cause of action exists under Illinois law for aiding

and abetting, the court denies defendants' motion to dismiss Counts II, VI, and XIII of the

amended complaint.

  B.  <u>Pleading with Particularity Under Fed. R. Civ. P. 9(b).</u>

  Defendants argue that plaintiff's counts II and IV alleging that the defendants fraudulent

transfers should be dismissed because plaintiff has failed to plead these claims with the requisite

level of particularity.

  According to the Seventh Circuit:

> Rule 9(b) provides that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.' Fed.R.Civ.P. 9(b). The circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.

*General Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997).

(citations and internal quotation marks omitted).  Rule 9(b) requires that a plaintiff provide the

"who, what, when, where, and how: the first paragraph of any newspaper story."  *DiLeo v. Ernst*

*& Young*, 901 F.2d 624, 627 (7th Cir. 1990).

  The parties dispute how Rule 9(b) is to be applied in a case such as this alleging a

fraudulent conveyance.  The defendants recite the standards described above and contend that the

plaintiff must comply with these standards.  *Boyd Machine and Repair Co., Inc., v. D&L*

*Industrial Servs., Inc.*, 100 F. Supp. 2d 898, 900 (N.D. Ill. 2000); *Russo v. Bache Halsey Stuart*

*Shields, Inc.*, No. 82 C 4219, 1983 U.S. Dist. LEXIS 13555, at *2 (N.D. Ill. Sept. 21, 1983);

*Brandt v. Jack Levy Associates, Inc.*, 92 C 5075, 1993 WL 95383, at *1-2 (N.D. Ill. Mar. 30,

1993).  Alternatively, relying on *General Elec.*, the plaintiff argues that the fraudulent transfer

claims satisfy the Rule 9(b) requirements as long as they comply with "the more relaxed

standard" provided in Form 13 of the Appendix of Forms to the Federal Rules of Civil

Procedure. *General Elec.*, 128 F.3d at 1079.

In *General Elec.*, the Seventh Circuit addressed the defendant's argument that the district

court erred in concluding that the plaintiff's allegations as to its fraudulent transfer claim

satisfied Rule 9(b). In analyzing whether the plaintiff had complied with Rule 9(b), the Seventh

Circuit first commented that Fed. Rule of Civ. P. 84 states that "[t]he forms contained in the

Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and

brevity of statement which the rules contemplate." *Id.* The Seventh Circuit then referred to

Form 13, which provides an example of a complaint on a joint claim to recover debt and to set

aside a fraudulent conveyance under Rule 18(b). *Id.* Form 13 requires: 1) an allegation of

jurisdiction; 2) a statement of the date and the conditions under which the defendant executed a

promissory note[2] to the plaintiff; 3) a statement that the defendant owes the plaintiff the amount;

4) a description of the events surrounding the defendant's conveyance of all of his property to the

transfer recipient for the purpose of defrauding plaintiff and delaying the collection of the

indebtedness by the plaintiff;[3] and 5) the plaintiff's demand of the court.

---

[2]The defendants' attempt to distinguish *General Elec.* on the ground that it was a
promissory note case whereas the instant case is premised on the collection of a judgment debt is
not well–taken. As noted above, Form 13 provides the form for a claim to recover a debt. For
purposes of this motion, a debt is a debt regardless of whether it is created by a promissory note
or a judgment in court. Given that this court must accept all well-pleaded allegations as true, it
accepts plaintiff's allegations that it has obtained two judgments against the defendants upon
which it is attempting to execute.

[3]Under Illinois law, a party may plead a fraudulent conveyance under either a constructive
fraud or actual fraud theory. Under the constructive fraud theory, a party may plead that the
debtor made the transfer or incurred an obligation "without receiving a reasonably equivalent

In *General Elec.*, the Seventh Circuit concluded that "GE Capital has pled these elements with sufficient particularity." *Id*. at 1080. Specifically, the Seventh Circuit stated that the following allegations satisfied Rule 9(b):

> The Fourth Amended Complaint states the following allegations: The promissory note and guaranties for the airplane were executed on December 23, 1991. See Complaint ¶¶ 8-10. Aero defaulted on its payments and GE Capital responded by replevying the airplane and obtaining a judgment against its guarantors (including Rental) for the remaining amount. See id. ¶¶ 12-13. Rental settled an unrelated class action on March 4, 1993. *See id.* ¶ 15. As part of the settlement, Rental "transferred, assigned and conveyed substantially all of its assets to LRC in exchange for a release of pending legal claims against Rental." *Id*. Rental allegedly did not receive from LRC or the limited partnerships any reasonably equivalent value that would be applied to the deficiency due GE Capital. See id. ¶ 37. This transfer rendered Rental insolvent and "effectively precluded Rental from meeting any deficiency obligation to GE Capital for the aircraft under Rental's guaranty." *Id*. ¶ 15. Finally, GE Capital asked the district court 1) to enter a judgment for the deficiency plus prejudgment interest and attorneys' fees, cost and expenses and 2) to declare the transfer of assets from Rental to LRC null and void to the extent of this judgment. *See id.* ¶ 43

Thus, this court does not read *General Elec.* as approving a "relaxed standard" – only that the plaintiff had met the pleading requirements under Rule 9(b) for alleging fraudulent transfers. *Id*. ("This complaint has sufficiently detailed the circumstances surrounding LRC's alleged constructive fraud.").

In the instant case, the plaintiff's fraudulent conveyance claims include the following

---

value in exchange for the transfer or obligation." 740 ILCS 160/5 (a)(2). Under an actual fraud theory, the plaintiff must show that the debtor made the transfer with the "actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1). The *General Elec.* case dealt with a fraudulent conveyance claim only under a constructive fraud theory whereas in the instant case, the plaintiff alleges a fraudulent conveyance under both theories. However, given that the *General Elec.* court freely substituted the "reasonably equivalent value" element with the "actual intent to hinder or delay" element in its analysis, *General Elec.*, 128 F.3d at 1080 n.5, this court concludes that the *General Elec.* court's analysis would have been the same under either an actual or constructive fraud theory.

allegations:

1) jurisdiction (Amended Compl. at ¶¶43-45)

2) it obtained judgments against RDG and Bar Louie Tempe, Inc. on February 10, 2005 (Amended Compl. at ¶¶ 1, 56)

3) the defendants owe plaintiff the sum stated (Amended Compl. at ¶¶ 56) ("No portion of the Judgments has been satisfied.")

4) the circumstances surrounding the alleged fraudulent transfer of the debt, specifically that:

> – RDG is a restaurant management company which was in the business of providing management services to the restaurants identified in the complaint and was entitled to receive 6% of each of the restauratns net sales (Amended Compl. at ¶¶ 46-48).

> – Greenfield and Kasemir are officers and directors of RDG (Amended Compl. at ¶46).

> – Each of the restaurants for which RDG was providing management services was owned and operated either directly or indirectly by Greenfield and Kasemir (Amended Compl. at ¶47).

> – RDG guaranteed the real property leases on the restaurants it opened starting in the late 1990's (Amended Compl. at ¶¶50-51).

> – For a number of years, RDG's restaurant management business was profitable and by 2002 RDG was reporting over $2 million in ordinary income on its federal income tax return (Amended Compl. at ¶52).

> – In 2002 and 2003 Greenfield and Kasemir closed at least 10 restaurants whose real property leases and/or other obligations had been guaranteed by RDG (Amended Compl. at ¶53).

> – Due to the guarantees RDG had with respect to the restaurants that had closed, its revenues decreased and by 2003 RDG was insolvent.(Amended Compl. at ¶54).

> – To avoid paying the claims of RDG's creditors, in 2003 RDG terminated its Management Agreements with each of the restaurants for no consideration and transferred the management rights to that income to or

for the benefit of Greenfield, Kasemir, RDG Chicago, the restaurants and/or their affiliates (Amended Compl. at ¶55).

In addition to the allegations listed above, the plaintiff notes that just before filing their motion to dismiss, the defendants sent to plaintiff an affidavit by Theodore Kasemir in which he stated that all management agreements and all loan agreements by RDG were oral agreements. *See* Exh. A to Plaintiff's Resp. to Motion to Dismiss. As this court has stated, "[w]here the matters alleged are within the opposing parties' knowledge, . . . , less detail is required." *Western United Life Assurance Co. v. Fifth Third Bank*, No. 02 C 7315, 2003 WL 444417, at *3 (N.D. Ill. Feb. 21, 2003).

Given that the RDG management and loan agreements were verbal, and information related to the forgiveness of the loans or the transfer of the rights under the management agreements are likely within the specific knowledge of the defendants, less specificity is required. Further, the allegations listed above are at least as particularized (if not more so) than those that were declared sufficient by the Seventh Circuit in *General Elec*tric. Accordingly, the court finds that the allegations in this case satisfy the pleading requirements of Rule 9(b) with the exception of the allegations in the second sentence of paragraph 55 of the Amended Complaint.

The second sentence of paragraph 55 alleges "on information and belief" that RDG made "other transfers" for no consideration to or for the benefit of Greenfield, Kasemir, RDG Chicago, the Restaurants and/or their affiliates. "Allegations based on information and belief usually do not satisfy the particularity requirement in Rule 9(b)." *Id*. However, as noted above, a plaintiff has more leeway when the facts supporting the allegations are in the exclusive knowledge of the defendant. *Id*. Nevertheless, "even when facts are 'inaccessible to the plaintiff, unless the

plaintiff states the grounds for his suspicions,' a claim for fraud 'upon information and belief' is insufficient." *Id*. (citations omitted).

In his response to the motion to dismiss, the plaintiff attempts to support the allegation by asserting that "[i]n light of the Defendants' thirty (or more) fraudulent transfers in the form of terminating the RDG's management agreements for no consideration, it is not a stretch to believe that the Defendants took other deliberate steps to transfer and conceal assets." Resp. at 8. The court has carefully studied the amended complaint and concludes that such a leap in logic does not satisfy the pleading requirements of Rule 9(b). Simply because the plaintiff has stated facts to support the fraudulent conveyances regarding the management agreements does not support a finding that the defendants must therefore have engaged in other fraudulent conveyances. Because the plaintiff has not provided the court with any facts supporting the allegation that "other" fraudulent transfers occurred, the court strikes this allegation.

**IV.     Conclusion**

For the reasons stated herein, the defendants' motion to dismiss [48-1] is denied in part and granted in part.  Specifically, to the extent that the plaintiff is attempting to state a fraudulent conveyance claim based on "information and belief" as to "other transfers," that allegation is stricken.  The remaining relief in the motion to dismiss is denied.


**ENTER:**


**DATE:**    October 11, 2005                    _Blanche M. Manning_
                                                 **Blanche M. Manning**
                                                 **United States District Judge**